1  NORMAN H. LEVINE (SBN 061884)
   NLevine@GreenbergGlusker.com
2  AARON J. MOSS (SBN 190625)
   AMoss@GreenbergGlusker.com
3  SEDINA L. BANKS (SBN 229193)
   SBanks@GreenbergGlusker.com
4  GREENBERG GLUSKER FIELDS CLAMAN &
   MACHTINGER LLP
5  1900 Avenue of the Stars, 21st Floor
   Los Angeles, California  90067-4590
6  Telephone:  310.553.3610
   Fax:  310.553.0687
7
   Attorneys for Defendant
8  Costco Wholesale Corporation

9

10              UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12

13  OMEGA S.A. and THE SWATCH          Case No.  CV 04-5443 TJH (RCx)
    GROUP (U.S.) INC.,
14                                     **DEFENDANT COSTCO
              Plaintiffs,              WHOLESALE CORPORATION'S
15                                     MEMORANDUM OF POINTS AND
    v.                                 AUTHORITIES IN OPPOSITION
16                                     TO PLAINTIFF OMEGA S.A.'S
    COSTCO WHOLESALE                   MOTION FOR SUMMARY
17  CORPORATION,                       JUDGMENT**

18            Defendant.
                                       [Declaration of Aaron J. Moss and
19                                     Exhibits in Support Thereof; Response to
                                       Statement of Uncontroverted Facts and
20                                     Conclusions of Law; Evidentiary
                                       Objections and Proposed Order Filed
21                                     Concurrently Herewith]

22                                     Date:  August 17, 2009
                                       Time:  9:30 a.m.
23                                     Courtroom:  17

24                                     Action Filing Date:  July 14, 2004
                                       Trial Date:  November 17, 2009
25

26

27

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

71825-000157/1695435.3

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ............................................................................. 1

II.  FACTS ......................................................................................... 4

A.   The Parties and Their Businesses................................................. 4

B.   Omega's Use of the Omega Globe to Attempt to Improperly
Control Importation and Costco's Lack of Knowledge of the
Design. ...................................................................................... 5

C.   Costco's Purchase and Sale of the Omega Seamaster Watches
Containing the Omega Globe......................................................... 6

III. ARGUMENT ................................................................................. 8

A.   There is a Factual Dispute Concerning the Elements of Section
602. .......................................................................................... 8

1.   Omega Conferred Implied Authority to Import..................... 8

2.   Implied Authority Need Not Refer To A Particular
Importer.......................................................................... 15

3.   Non-Importing Retailers Are Not Liable Under Section
602(a). ........................................................................... 17

4.   Costco Did Not Acquire Watches Outside Of The United
States. ............................................................................ 20

B.   Omega Engaged In "Copyright Misuse" And Its Actions Violate
the Public Policy Underlying the Copyright Act. .............................. 20

C.   Omega's Copyright Claims Fail Because the Omega Globe is a
Mere Compilation of Unprotectable Elements and a Useful
Article. ...................................................................................... 23

1.   Collection of Unprotectable Elements ................................ 23

2.   Useful Article. ................................................................ 24

IV.  CONCLUSION .............................................................................. 25

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES:

Altera Corp. v. Clear Logic, Inc.,
424 F.3d 1079 (9th Cir. 2005) ........................................................ 22

Chamberlain Group, Inc. v. Skylink Techs, Inc.,
381 F.3d 1178 (Fed. Cir. 2004) ...................................................... 21

Clicks Billiards, Inc. v. Sixshooters, Inc.,
251 F.3d 1252 (9th Cir. 2001) ........................................................ 23

Cool Fuel, Inc. v. Connett,
685 F.2d 309 (9th Cir. 1982) .......................................................... 15

Denbicare U.S.A. Inc. v. Toys "R" Us, Inc.,
84 F.3d 1143 (9th Cir. 1996) ..................................................... 17, 20

Disenos Artisticos E Industriales, S.A. v. Costco Wholesale Corp.,
97 F.3d 377 (9th Cir. 1996) ..................................................... passim

Enesco Corp. v. Jan Bell Mktg. ....................................................... 18

Galiano v. Harrah's Operating Co.,
416 F.3d 411 (5th Cir. 2005) .......................................................... 25

Gospel Missions of America v. City of Los Angeles,
328 F.3d 548 (9th Cir. 2003) .......................................................... 15

International Motor Contest Ass'n. v. Staley,
434 F. Supp. 2d 650 (N.D. Iowa 2006) ......................................... 22

Kennedy v. Allied Mut. Ins. Co.,
952 F.2d 262 (9th Cir. 1991) .......................................................... 11

Korman v. HBC Florida, Inc.,
182 F.3d 1291 (11th Cir. 1999) ................................................. 15, 16

Lafayette v. Louisiana Power & Light Co.,
435 U.S. 389 (1978) ........................................................................ 20

Lamps Plus, Inc. v. Seattle Lighting Fixture Co,
345 F.3d 1140 (9th Cir. 2003) ........................................................ 24

Lasercomb Am. Inc. v. Reynolds,
911 F.2d 970 (4th Cir. 1990) .......................................................... 21

Lexmark Int'l, Inc. v. Static Control Components, Inc.,
387 F.3d 522 (6th Cir. 2004) .......................................................... 21

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

COSTCO'S OPPOSITION TO OMEGA'S MOTION FOR SUMMARY JUDGMENT

**TABLE OF AUTHORITIES**
(continued)

Page

Naify v. McClatchy Newspapers,
  599 F.2d 335 (9th. Cir. 1979) ............................................................. 9

Omega S.A. v. Costco Wholesale Corp.,
  541 F.3d 982 (9th Cir. 2008) ...................................................... 17, 18

Open Source Yoga Unity v. Choudhury,
  74 U.S.P.Q.2d (BNA) 1434, 2005 U.S. Dist. LEXIS 10440 (N.D. Cal.
  April 1, 2005) ..................................................................................... 22

Parfums Givenchy, Inc. v. C & C Beauty Sales, Inc.,
  832 F. Supp. 1378 (C.D. Cal. 1993)...................................... 8, 17, 18

Parfums Givenchy v. Drug Emporium, Inc.,
  38 F.3d 477 (9th Cir. 1994) ............................................................. 17

Poe v. Missing Persons,
  745 F.2d 1238 (9th Cir. 1984) ......................................................... 25

Practice Mgmt. Info. Corp. v. American Med. Ass'n,
  121 F.3d 516 (9th Cir.), amended, 133 F. 3d 1140 (9th Cir. 1997) ................. 22

Satava v. Lowry,
  323 F.3d 805 (9th Cir. 2003) ..................................................... 23, 24

Twentieth Century Music Corp. v. Aiken,
  422 U.S. 151 (1975) ......................................................................... 20

UMG Recordings, Inc. v. Disco Azteca Distribs.,
  446 F. Supp. 2d 1164 (E. D. Cal. 2006) ......................................... 18

Unidisco, Inc. v. Schattner,
  824 F.2d 965 (Fed. Cir. 1987).......................................................... 15

United States. v. Derr,
  968 F.2d 943 (9th Cir. 1992) ........................................................... 18

United States v. Paramount Pictures, Inc.,
  334 U.S. 131 (1948) ......................................................................... 21


**STATUTES:**

17 U.S.C. § 101 ................................................................................ 24, 25

17 U.S.C. § 106 ...................................................................................... 2

17 U.S.C. § 112(e) .................................................................................. 9

17 U.S.C. § 115(a)(2) .............................................................................. 9

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

iii

COSTCO'S OPPOSITION TO OMEGA'S MOTION FOR SUMMARY JUDGMENT

1

### TABLE OF AUTHORITIES
### (continued)

2

Page

3
17 U.S.C § 410(c) ..............................................................................23

4
17 U.S.C. § 501(a) ............................................................................19

5
17 U.S.C. § 602 ........................................................... 2, 9, 17, 18, 19

6
Fed. R. Civ. P. 37(c)(1) ....................................................................10

7
U.S. Const. Art. I, § 8, cl. 8 ...............................................................22

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

iv

COSTCO'S OPPOSITION TO OMEGA'S MOTION FOR SUMMARY JUDGMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Omega S.A., Inc. ("Omega") has re-filed a motion that this Court previously denied.  The Court should deny it once again.

On February 6, 2007, the Court issued an Order and Judgment granting the motion for summary judgment brought by defendant Costco Wholesale Corporation ("Costco") and denying the motion for summary judgment brought by Omega. Clerk's Docket Entry ("D.E.") 248.  Costco's motion was brought on the ground that the Copyright Act's "first sale doctrine" barred all of Omega's claims.  The Ninth Circuit subsequently reversed this Court's grant of summary judgment, and although at least one circuit judge voted to rehear the matter, Costco's petition for rehearing *en banc* was denied.  On May 18, 2009, Costco filed a petition for a writ of certiorari in the United States Supreme Court, which is currently pending. Declaration of Aaron J. Moss ("Moss Decl."), Exh. "AA" [Supreme Court Cert. Petition].

Costco believes that this Court's interpretation of the first sale doctrine is the correct one, and hopes that the Supreme Court will agree.  If certiorari is denied, the Ninth Circuit's first sale ruling will stand, and Costco's Fourth Affirmative Defense will be withdrawn at that time.  But it is important for the Court to remember that, while Costco's motion for summary judgment focused almost solely on the first sale issue, Omega's cross-motion sought summary judgment on Omega's copyright infringement claim and sought to defeat several (although not all) of Costco's affirmative defenses.[1]  In either event, now that Omega's motion has been renewed, it should be denied again, notwithstanding the Ninth Circuit's first sale ruling.

As the Court will recall, this action arises out of Omega's efforts to block

---

[1] Neither Omega's previous motion, nor its current motion, seeks adjudication of Costco's Tenth and Eleventh Affirmative Defenses for Violation of Public Policy and Copyright Misuse, respectively.  Thus, regardless of the outcome of this motion, Costco should be permitted to proceed to trial on at least these defenses.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

COSTCO'S OPPOSITION TO OMEGA'S MOTION FOR SUMMARY JUDGMENT

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

Costco's sale of genuine Omega watches.  In doing so, Omega has attempted to use the Copyright Act, not for its intended purpose of furthering creative expression, but purely as an anti-competitive tool to control the importation of watches that are outside the scope of copyright protection.

Omega concedes that absent its purported copyright claim, it cannot prevent Costco from selling Omega's watches.  Indeed, before this action was filed, Costco sold Omega watches for years without objection.  However, in 2003, in an improper attempt to invoke copyright law, Omega's attorneys devised an artifice by which Omega engraved a simple, tiny design consisting of three Greek "Omega" symbols and stars inside a circle (the "Omega Globe") on the <u>back</u> edge of one Omega watch model, Seamaster Model No. 2531.80.  The Omega Globe measures less than one-half centimeter in diameter and is barely perceptible:



The back of the Omega Seamaster Model 2531.80
shown approximately actual size.  Moss Decl., Exh. "Q."

Omega registered a copyright in the Omega Globe and thereafter brought this lawsuit, claiming Costco violated sections 106 and 602 of the Copyright Act (17 U.S.C. §§ 106, 602) by selling Seamaster watches with the Omega Globe in its warehouse stores.

Omega's summary judgment motion should be denied for several independent reasons:

First, Omega cannot establish the absence of material facts regarding the elements of section 602, which requires that a defendant: (1) "import" a

COSTCO'S OPPOSITION TO OMEGA'S MOTION FOR SUMMARY JUDGMENT

copyrighted work; (2) that a defendant has "acquired outside the United States"; (3) "without the authority of the owner of copyright."  Under Ninth Circuit law, authority may be implied, and implied authority to import exists where a copyright owner sells its works without export restrictions.  Omega's claim to a "consistent," "well-defined" and "strict" territorial distribution policy is belied by the evidence, which demonstrates that except for one distributor in each of three countries, Omega has no written sales agreements with its more than 250 distributors and retailers, and that it imposes no restrictions as to whom its retailers or their customers may resell watches.  In addition, the undisputed evidence demonstrates that Costco did not "import" the Omega watches sold in its warehouse stores; nor did it acquire these watches from "outside the United States."  Because Omega cannot establish these elements of its claims, summary judgment should not only be denied for Omega, but entered in Costco's favor.

Second, by using the Copyright Act to further its strategy of controlling importation, Omega has violated public policies underlying the Act and has engaged in "copyright misuse."  This defense applies where, as here, Omega has attempted to leverage the limited monopoly conferred by its copyright in the Omega Globe to control products (watches) that are not protected by copyright.

Third, Omega's claims fail because the Omega Globe is an unoriginal compilation of unprotectable elements, as well as a "useful article."  For both reasons, it is not subject to copyright protection.  The combination of common elements does not rise to the level of originality sufficient to merit copyright protection.  In addition, under the Copyright Act, objects, like watches, that have an intrinsic utilitarian function are not eligible for copyright protection.  Individual design elements are only eligible to the extent they are capable of existing independently of the utilitarian aspects of the article, and not where they consist only of a combination of unprotectable elements.  The validity of Omega's copyright presents a triable issue, because the Omega Globe serves a functional

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1   purpose, has no commercial value independent of the watch, and is unoriginal.[2]

2

3   **II.   FACTS**

4      **A.   The Parties and Their Businesses.**

5         Omega manufactures watches in Switzerland.  Omega's Statement of

6   Uncontroverted Facts ("SUF"), Fact 1.  It has more than 250 designated distributors

7   and retailers that sell its watches throughout the world.  Moss Decl., Exh. "R"

8   [Omega's List of Agents].  Except as to a single distributor in each of Paraguay,

9   Israel and Turkey, Omega has no written sales contracts with any of these

10   distributors and retailers.  Moss Decl., Exh. "I" [Deposition of Raynald

11   Aeschlimann ("RA Depo.") 133:11-134:24; 240:22-241:8].  Nor does Omega

12   impose any restrictions as to whom retailers or the customers of retailers may resell

13   watches.  Id. [RA Depo. 121:24-122:11; 122:19 -124:3; 248:11-249:5].  Many of

14   Omega's distributors have sold watches for direct or indirect resale outside of their

15   designated territories.  In the vast majority of cases, Omega has not terminated its

16   relationships with these distributors, and they continue to be distributors.  Id. [RA

17   Depo. 156:8-159:13; 161:16-162:5; 179:23-180:6].

18         Defendant Costco operates membership warehouse clubs.  It sells brand-

19   name merchandise, including fine watches, to its members at lower prices than its

20   competitors.  As an example, Omega's suggested retail price for the Omega

21   "Seamaster" watch at issue in this lawsuit is $1,995.  Moss Decl., Exh. "W" [2004

22   Price List].  Costco sold this watch for $1,299.  Moss Decl., Exh. "P" [Pretrial

23   Conf. Order Stipulated Fact ("Stip. Fact") 10].  In addition to low prices, Costco

24   offers a generous customer satisfaction policy:  if any watch purchased by a Costco

25   member requires service, or if the member is dissatisfied with his or her purchase at

26   ───────────────
[2] As Omega has not moved for summary judgment as to remedies (Mem., 1, n.2),
27   Costco reserves its arguments on this issue.  Costco also reserves its previous
     arguments as to the first sale doctrine, pending the outcome of its petition for writ
28   of certiorari in the United States Supreme Court.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1   any time for any reason, Costco will repair the watch or refund the member's

2   money.  Moss Decl., Exh. "K" [Costco Guarantee].  This guarantee is better and

3   more comprehensive than the warranty provided by Omega on its watches, which is

4   limited to three years.  Moss Decl., Exh. "S" [Omega Warranty].

5       Some Omega dealers in the United States have complained about Costco's

6   sales of Omega watches, because they dislike the competition.  Moss Decl., Exh.

7   "F" [Deposition of Robert Emmons ("RE Depo."), 79:1-81:2]; Exh. "M"

8   [Deposition of Yann Gamard ("YG Depo."), 59:11-62:24]; Exhs. "G" and "H"

9   [emails from Omega's dealers].

10

11   **B.**   **Omega's Use of the Omega Globe to Attempt to Improperly**

12          **Control Importation and Costco's Lack of Knowledge of the**

13          **Design.**

14       While Omega has not designated Costco as an "authorized" dealer of Omega

15   watches, Omega has known for many years that Costco sells Omega watches at its

16   warehouse stores.  Moss Decl., Exh. "F" [RE Depo. 123:17-124:8].  However,

17   Omega took no legal action against Costco until it filed this action because it knew

18   it was not unlawful for Costco to resell genuine Omega watches.  Moss Decl., Exh.

19   "M" [YG Depo. 124:8-125:3].  Nevertheless, because authorized dealers

20   complained about price competition, Omega's legal department devised a plan to

21   try to prevent these watches from being resold by retailers such as Costco.  In 2003,

22   Omega registered a copyright in the "Omega Globe" with the United States

23   Copyright Office and placed a tiny engraving of the Globe on the back edge of one

24   of its best selling watches, the Seamaster Model 2531.80.  Moss Decl., Exh. "P"

25   [Stip Fact 1].  Yann Gamard ("Gamard"), the highest ranking representative of

26   Omega's U.S. affiliate, the Swatch Group ("TSG"), testified that the Omega Globe

27   was designed and used by Omega specifically to control the importation of Omega

28   watches and "to prevent unauthorized dealership."  Moss Decl., Exh. "M" [YG

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

COSTCO'S OPPOSITION TO OMEGA'S MOTION FOR SUMMARY JUDGMENT

Depo. 65:7-66:3; 68:3-15; 133:25-136:20; 139:21-140:14; 142:25-143:12].

Omega did not inform Costco of its plan.  To the contrary, at the same time Omega was placing the Omega Globe on its Seamaster Watch, Omega led Costco to believe that it might be interested in Costco becoming an "authorized" dealer of Omega watches.  Gamard and other top officials of TSG met with Costco representatives on several occasions to discuss Omega's selling watches directly to Costco.  Moss Decl., Exh. "M" [YG Depo. 95:19-99:22; 104:7-17; 112:22-117:23; 122:6-125:3].  Gamard invited several Costco representatives to meet with him at TSG's New Jersey headquarters and thereafter offered to fly to Costco's Seattle headquarters to discuss a business relationship.  Id. [YG Depo. 129:18-130:15].  These discussions took place at the same time that, unbeknownst to Costco, Omega was placing the Omega Globe on its watches.  Id. [YG Depo. 160:13-163:1; 163:19-22; 142:25-143:12].

Omega did not conceal the Omega Globe only from Costco.  It made a conscious decision not to publicize the Omega Globe at all.  The Omega Globe was not only tiny and hidden on the back of the Seamaster Watch, but as Omega's Vice President of International Sales, Raynald Aeschlimann ("Aeschlimann"), testified, Omega intended to keep the Omega Globe confidential from all outsiders, including its own distributors and consumers at large.  Moss Decl., Exh. "I" [RA Depo. 69:18-23; 76:15-78:14; 99:16-101:11].  Omega has no evidence that it marketed or advertised the Globe in any way, and it was obviously not a feature that enhanced the watch or its attractiveness to consumers.

C.     **Costco's Purchase and Sale of the Omega Seamaster Watches Containing the Omega Globe.**

Costco has purchased Omega watches and resold them to members in its warehouses for many years.  Moss Decl., Exh. "F" [RE Depo. 123:17-124:8].  In calendar year 2004, among the many Omega watches it purchased were 117

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

COSTCO'S OPPOSITION TO OMEGA'S MOTION FOR SUMMARY JUDGMENT

Seamaster style Omega watches, Model No. 2531.80, which unbeknownst to it, contained the Omega Globe.  Moss Decl., Exh. "P" [Stip. Fact 5].  Costco sold 43 of these watches to its members in calendar year 2004.  Id. [Stip. Fact 6].  Costco did not import these watches.  Rather, it purchased them from one of its suppliers, ENE Ltd. ("ENE"), F.O.B. New York.  Moss Decl., Exh. "O" [Deposition of Emil Mizrahi ("EM Depo.") 12:17-19].  After this action was filed, Costco learned, through documents produced in the lawsuit, that ENE purchased many of these watches from TimeWorks, Inc., also in New York [EM Depo. 70:4-71:16], which in turn purchased them from Switzerland – a country in which Omega admits that it imposes no contractual, territorial restrictions on resales.  Moss Decl., Exh. "I" [RA Depo. 128:25-129:11; 173:11-15; 175:8-15].

In July 2004, Omega filed this copyright action against Costco, and shortly thereafter filed a motion for preliminary injunction.  After receiving Omega's motion for preliminary injunction, Costco voluntarily stopped selling the watches and decided not to oppose the motion on the merits, but rather to wait to challenge Omega's claims until it developed a fuller record.

The preliminary injunction was thus issued without Costco or the Court addressing any of the issues raised in this opposition.  After it was issued, Costco directed ENE not to send it watches that contained the Omega Globe.  Declaration of Thomas Gulick ("Gulick Decl."), Exh. "O."  Costco lawfully continued to do business with ENE, buying watches that were not Omegas and buying Omegas that did not have the Omega Globe.  On two occasions in 2005 and 2006, however, ENE mistakenly shipped Costco several hundred Globe watches.  Costco immediately turned these watches over to Omega, as required by the preliminary injunction.  Gulick Decl., Exhs. "N," "O."[3]

---

[3] Omega makes many different styles of Omega watches.  Omega concedes that only "Seamaster" style watches are at issue in this case. [FAC, ¶¶ 13, 18, 33, 36].  In a discovery motion, Omega stated that "[t]his case is ONLY based on Omega Seamaster watches with the copyrighted Omega Globe Design.  The sale of all

COSTCO'S OPPOSITION TO OMEGA'S MOTION FOR SUMMARY JUDGMENT

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

III.   **ARGUMENT**

    A.   **There is a Factual Dispute Concerning the Elements of Section 602.**

It is Omega's burden to prove four elements to establish a section 602 violation (subject to Costco's defenses): (1) it must be the "owner of copyright" of the Omega Globe; (2) copies of the Omega Globe must have been imported into the United States; (3) "without the authority of the owner of copyright"; and (4) the imported copies must have been "acquired outside the United States." Parfums Givenchy, Inc. v. C & C Beauty Sales, Inc., 832 F. Supp. 1378, 1383 (C.D. Cal. 1993).

There is a triable issue of fact as to each of the last three of these four statutory requirements. First, the evidence shows that Omega at least impliedly authorized the importation of Omega Globe watches into the United States by not imposing export restrictions on its distributors and retailers. Second, Costco did not import watches with the Omega Globe into the United States; it purchased them from a third party after they had been imported by others. Third, Costco did not acquire watches with the Omega Globe "outside the United States."

    1.   **Omega Conferred Implied Authority to Import.**

In Disenos Artisticos E Industriales, S.A. v. Costco Wholesale Corp., 97 F.3d 377 (9th Cir. 1996), plaintiff, the owner of copyrights in Lladro figurines, contended that Costco violated section 602 by obtaining figurines designated for sale abroad and selling them in the U.S. without permission. The Ninth Circuit held that Costco had at least implied authority to sell plaintiff's figurines, because plaintiff had licensed their sale abroad without any export restrictions. It held:

---

other watches is completely irrelevant to this issue of the unauthorized importation of the Omega Globe Design." Moss Decl., Exh. "L" [Portions of March 1, 2006 Joint Stipulation Re: Costco's Motion to Compel Discovery]. The watches that were delivered to Costco after the injunction issued were not Seamasters, and thus are not the subject of this lawsuit. Gulick Decl., Exhs. "N," "O."

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1  "Authorization by a copyright owner to export goods to anywhere in the world

2  necessarily implies authority to import the goods into the United States.  <u>So do</u>

3  <u>sales without restriction on export into the United States.  No written or express</u>

4  <u>authorization to import is required under 17 U.S.C. § 602(a)</u>."  97 F.3d at 382

5  (emphasis added).

6      Thus, under <u>Disenos</u>, there are two <u>separate and independent bases</u> for

7  finding implied authorization for copyrighted goods to be imported into the United

8  States: (1) when a copyright owner expressly authorizes its licensees to export

9  goods to anywhere in the world; <u>or</u> (2) when a copyright owner makes sales <u>without</u>

10  <u>restrictions</u> on export into the United States.  <u>Disenos</u>, 97 F.3d at 382.  It is the

11  second of these two scenarios that applies here.  For purposes of section 602, the

12  absence of exportation restrictions <u>necessarily implies</u> authority to import into the

13  United States, thereby defeating a claim for unauthorized importation as a <u>matter of</u>

14  <u>law</u>.  <u>Disenos</u>, 97 F.3d at 382 (granting summary judgment for defendant).  <u>See also</u>

15  <u>Naify v. McClatchy Newspapers</u>, 599 F.2d 335, 337 (9th. Cir. 1979) (if copyright

16  owner does not impose exportation restrictions on its downstream sellers, they

17  remain free to sell to anyone they choose).  Omega's attempt (Mem, 20:24-26) to

18  limit the holding of <u>Disenos</u> to circumstances where the copyright owner gives

19  express permission to export simply ignores the other basis recognized by the Ninth

20  Circuit, the making of sales without restrictions.

21      <u>Disenos</u> comports with the plain language of section 602, which prohibits

22  importation into the U.S. only "without the authority of the owner of the

23  copyright."  17 U.S.C. § 602(a).  Section 602(a) does <u>not</u> require the "express

24  consent" of the copyright owner to import.  <u>Cf.</u> 17 U.S.C. § 112(e) (requiring "the

25  express consent of the owners of copyright"); 17 U.S.C. § 115(a)(2) (requiring "the

26  express consent of the copyright owner").

27      In its motion, Omega asserts that it "insists that contracts with its distributors

28  include detailed 'territorial restrictions.'"  (Mem, 21:2-4)  It also claims that it has

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

COSTCO'S OPPOSITION TO OMEGA'S MOTION FOR SUMMARY JUDGMENT

a "well-defined, unambiguous and consistent method" of territorial restrictions (Mem. 22:3-4) and a "tightly woven and strictly enforced" distribution scheme (Mem. 21:13-14). The evidence is to the contrary. Indeed, Omega has written contracts with only three of its more than 250 distributors and retailers. Except for agreements with one distributor in each of Paraguay, Turkey and Israel, there are <u>no</u> written distributorship agreements at all, let alone the "detailed territorial restrictions" that Omega claims to exist.[4] Omega's Aeschlimann testified that there is <u>nothing</u> other than Omega's contracts with distributors that would prevent them from exporting watches to the United States. Moss Decl., Exh. "I" [RA Depo. 111:9-13]. The absence of such agreements demonstrates Omega's complete lack of any consistent policy prohibiting exportation of watches.

In its reply brief in support of its original motion for summary judgment, Omega argued that "more than ninety percent (90%) of [Swatch Group] exclusive distributors are Swatch Group A.G. subsidiaries [,which] explains the absence of distributor contracts." D.E. 221 [January 5, 2007 Reply Mem. at 5:19-20]. Omega does not renew this argument here, for good reason: it is false. The only document submitted by Omega in support of that proposition, the 2003 Swatch Group Annual Report, revealed that Omega distributes through 31 company-owned subsidiaries or affiliates, compared to *seventy two* outside distributors, which sell in countries such as Poland, Russia, Argentina, Chile, Saudi Arabia and many others. Moss Decl., Exh. "Z" [Portions of 2003 Swatch Group Annual Statement, submitted by Matthew Wagner as Exhibit A in Support of Reply to Omega's previous Motion for Summary Judgment]. Omega's own evidence thus shows that only *thirty percent*

---

[4] Costco on several occasions asked Omega to produce all of its distributorship contracts. Moss Decl., ¶¶ 2 and 3 & Exhs "A," "B," "C" and "D" [RA Depo. 133:11-134:24]. Costco's counsel specifically warned Omega's counsel that Omega could not rely on documents it did not produce in discovery. <u>Id.</u> Omega's counsel confirmed that, other than the agreements with Paraguay, Turkey, and Israel, no other distributor agreements exist. Moss Decl., Exh. "I" [RA Depo. 240:22-241:8]. Of course, Omega may not come forward for the first time now with evidence of additional agreements. Fed. R. Civ. P. 37(c)(1).

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

(not ninety percent) of Omega's distributors are subsidiaries or affiliates, as opposed to outside distributors. More importantly, Omega has only imposed written territorial restrictions on *three* of its 72 outside distributors, revealing just how porous its international distribution system actually is.

In support of the supposedly undisputed fact that "Omega's contracts with its distributors and retailers limit the territories in which they can sell and distribute the watches," Omega's revised motion cites TSG's "U.S. Brand Policy Statement" (SUF 13), which it concedes is the only document on which it relies to support its importation restrictions. Moss Decl., Exh. "E" [Omega's Response to RFP No. 2]. However, as Aeschlimann testified, this policy applies only to watches sold in the United States. Moss Decl., Exh. "I" [RA Depo. 126:9-11]. Omega does not rely on the U.S. Brand Policy Statement to prohibit the sale or import of watches into the U.S. from other countries. Id. [RA Depo. 125:16-19].

Paragraph 11 of Aeschlimann's declaration in support of Omega's motion conclusorily states that Globe watches "sold by Omega to any of its distributors outside the U.S. are subject to similar distribution agreements that restrict their exportation and resale outside of the geographic territory for that distributor." Not only has Omega not produced any of these supposedly similar agreements, but Aeschlimann's deposition testimony was to the contrary:[5]

Q: The Omega distribution policy does not include any restrictions as to whom retailers or distributors may resell?

A. Namely, no.

* * *

Q: Are there any restrictions as to who the customers of the retailers can resell Omega watches to?

---

[5] Declarations by a witness that contradict previous deposition testimony must be disregarded. See Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir. 1991).

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1    A:  No.

2    Moss Decl., Exh. "I" [RA Depo. 110:18-22; 122:19-22; 123:7-124:3.  See also RA

3    Depo. 107:22-25; 121:24-124:3; 248:11-249:5].

4            In its motion, Omega identified only two countries, Egypt and Paraguay,

5    from which watches sold by Costco containing the Omega Globe supposedly

6    originated.  First, Omega has not produced any written agreement with its Egyptian

7    distributor.  See fn. 4, above.  Indeed, Aeschlimann testified that no such

8    agreement, written or oral, was even discussed with the Egyptian distributor:

9            Q:  What are the terms with Gasser & Company regarding the export

10           of watches to the United States?

11           A:  The terms of what is the basis of this agreement with him is that

12           his territory is Egypt, including duty free in Egypt.

13           Q:  And is that the only term that pertains to whether or not he can

14           export watches to the United States?

15           A:  He cannot export watches outside of Egypt and that was never a

16           point of discussion from his side.

17           Q:  When you say it was never a point of discussion, what do you

18           mean?  He never discussed that with you?

19           A:  What I want to say is that, this is a clear point on which we never

20           had to discuss regarding a verbal agreement.

21   Moss Decl., Exh. "I" [RA Depo. 245:25-246:18 (emphasis added)].

22           Second, Aeschlimann also testified that after Omega's Paraguayan distributor

23   sold watches that ended up at Costco, the distributor signed a letter stating that it

24   would never again sell watches directly to the United States.  Moss Decl., Exh. "I"

25   [RA Depo. 162:7-164:11].  However, when Costco requested the letter in discovery

26   Omega admitted that it does not exist.  Moss Decl., Exhs. "B," "C," and "D"

27   [9/26/05 and 11/21/05 letters to Omega's counsel; Omega's 12/06/05 supplemental

28   response to RFP No. 4].

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1    Indeed, five years after this lawsuit was filed, 99% of Omega's distributors

2    still operate under no agreement prohibiting the sale of watches outside their

3    territories.

4    Many of the Seamaster watches containing the Omega Globe that Costco

5    turned over to Omega pursuant to the preliminary injunction originated from an

6    Omega retailer in Switzerland (and reached Costco via intermediate sales to

7    Timeworks, ENE and then Costco).  Moss Decl., ¶ 23, Exh. "Y" [invoices produced

8    by TimeWorks pursuant to Omega's subpoena].  Omega's "officially designated"

9    retailer in Switzerland is Barth Davos.  Declaration of Raynald Aeschlimann, Exh.

10   "A."  Aeschlimann admitted in his deposition, contrary to the assertions in Omega's

11   motion, that this Swiss retailer is under no export restrictions whatsoever:

12       Q:  So there is no contractual basis for prohibiting – or at least as of

13       August 2004 [the date of the lawsuit], there was no contractual basis

14       for prohibiting Barth from selling watches that ended up at Costco?

15       A:  No.

16       * * *

17       Q:  Did you enter into any agreement after August 2004 restricting

18       Barth's ability to sell watches outside of the Swiss territory?

19       A:  No.

20   Moss Decl., Exh. "I" [RA Depo. 173:11-15; 175:12-15.  See also RA Depo.

21   128:25-129:11; 175:8-11].

22   Finally, Omega claims in its motion that it strictly enforces these phantom

23   territorial restrictions, "terminating any distributor who is in breach."  (Mem.,

24   21:11-12).  Once again, this statement is belied by the evidence.  Aeschlimann

25   testified in his deposition that Omega terminated only two of the 11 distributors that

26   sold watches that ended up at Costco.  Moss Decl., Exh. "I" [RA Depo. 156:8-

27   159:13].  Moreover, he testified that these two distributors were not terminated

28   because they sold watches that ended up at Costco: "they were terminated in time

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

COSTCO'S OPPOSITION TO OMEGA'S MOTION FOR SUMMARY JUDGMENT

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1  after this, but that was not because of this." Id. [RA Depo. 157:16-20].  In other

2  words, Omega did not terminate any distributor because it violated supposed

3  restrictions and the watches thus wound up at Costco.  Many of the Omega

4  distributors that sold watches that ended up at Costco were still distributors at the

5  time of the Aeschlimann deposition.  Moss Decl., Exh. "I" [RA 179:23-180:6;

6  161:16-162:5].[6]

7  Omega has been aware for years that Omega watches are sold all over the

8  United States by retailers that are not designated by Omega.  According to Omega's

9  own study, Omega watches are sold by every Sam's Club, every Ultra-Diamond

10  store, at various stores in the New York and Los Angeles jewelry districts, and on

11  more than 100 internet web sites.  Moss Decl., Exh. "X" [Omega U.S. Gray Market

12  Analysis].  Omega has not taken action against any of these companies.  Moss

13  Decl., Exh. "I" [RA Depo. 180:8-183:14].  Nor has Omega taken any action against

14  the authorized distributors from whom these watches originated, despite admitting

15  that it can track all Omega watches by serial number.  Aeschlimann Decl., ¶ 5.

16  Indeed, Aeschlimann testified that Omega did not even ask its distributors the

17  names of the customers who sold the watches that ended up at Costco because that

18  information was "confidential" and was the distributors' own "business."  Moss

19  Decl., Exh. "I" [RA Depo. 160:23-161:15; 166:20-167:1].

20  Far from having a "consistent" and "strictly enforced" scheme of territorial

21  restrictions on distribution, Omega has virtually no restrictions at all.  Thus, under

22  Disenos, Omega has implicitly authorized the importation of its watches into the

23  United States.  This evidence defeats Omega's section 602 claim as a matter of

24

25  [6] For example, Roltime, Ltd. is Omega's designated distributor in Israel.
   (Roltime's corporate officer, David Polturak, submitted a declaration in support of
26  Omega's motion).  Aeschlimann testified that he is aware of instances in which
   Roltime has sold or distributed products outside its territory.  Moss Decl., Exh. "I"
27  [RA Depo. 144:19-22].  Nevertheless, Roltime continues to be an authorized
   distributor.  Declaration of David Polturak, ¶ 1.

28

law.[7]  At the very least, Omega has not met its burden of proof as to Costco's authorization defense, and there is a triable issue of fact requiring the denial of Omega's motion.

**2.    Implied Authority Need Not Refer To A Particular Importer.**

Perhaps recognizing that its distributors and retailers were implicitly authorized to import Omega watches into the United States, Omega argues that it explicitly notified Costco that it did not have Omega's authority to sell Omega watches.  While this is false, as discussed below, it is irrelevant to Omega's section 602 claim.

Section 602 requires a plaintiff to prove that <u>importation</u> was "without authority."  It does not require that the expression of authority refer specifically to a particular importer.  Instead, Costco is entitled to the benefit of the implied authority that Omega has conferred on its foreign distributors and retailers.  Omega sold watches to these distributors and retailers without imposing restrictions on the purchasers to whom they could resell the watches.  By law, all subsequent bona fide purchasers for value, such as Costco, acquire the same authority the upstream licensees received in the goods they purchase.  <u>See Unidisco, Inc. v. Schattner</u>, 824 F.2d 965, 968 (Fed. Cir. 1987) (where a patent owner gives a licensee "authority to sell the product," a subsequent purchaser from the licensee "had authority to resell the product it purchased").  Because the implied authority given to an upstream distributor extends to downstream sellers like Costco, Omega's claim for unlawful distribution under section 106 is, like its section 602 claim, also precluded.

Omega's reliance on <u>Korman v. HBC Florida, Inc.</u>, 182 F.3d 1291 (11th Cir.

---

[7]  Even though Costco has not moved for summary judgment, the Court may grant summary judgment in its favor on any issue <u>sua sponte</u> if the facts and law warrant it.  <u>Gospel Missions of America v. City of Los Angeles</u>, 328 F.3d 548 (9th Cir. 2003); <u>Cool Fuel, Inc. v. Connett</u>, 685 F.2d 309, 311 (9th Cir. 1982).

1   1999) is misplaced.  The court in that case held that plaintiff granted defendant

2   radio station an "implied license" to use her radio jingles by allowing it to air the

3   jingles during the seven years she was with the station.  Omega argues that, unlike

4   plaintiff in <u>Korman</u>, it filed suit against Costco within several months after

5   discovering that Costco was selling watches containing the Omega Globe.  But this

6   focuses on the wrong inquiry.  Whether there is implied authority is judged by

7   Omega's actions vis-à-vis upstream sellers, not Costco itself.  As discussed above,

8   Omega imposed no restrictions on the vast majority of its distributors, and did not

9   enforce supposed restrictions on the rest.

10        In any event, Omega never "explicitly notified" Costco that it could not sell

11   Omega watches (the only issue was whether Costco could buy direct rather than

12   through the secondary market).  Indeed, Omega engaged in a plan to string Costco

13   along, leading Costco to believe that it was amenable to doing business with

14   Costco.  Omega representatives met with Costco representatives several times to

15   discuss the possibility of Costco entering into a direct business relationship with

16   Omega.  Moss Decl., Exh. "M" [YG Depo. 95:19-99:22; 104:7-17; 112:22-117:23;

17   122:6-125:3].  One of the terms of a potential Omega-Costco direct sales agreement

18   proposed by Omega was that Costco would only buy Omega watches from Omega

19   and not from sellers in the secondary market, showing that the parties understood

20   that Costco was under no such restrictions absent an agreement.  Gamard's last

21   communication to Costco (<u>after</u> the Globe was placed on the watch but before

22   Costco learned about it by being served with this lawsuit) was that "[t]he line is

23   open" and "I look forward to continuing the discussion."  Moss Decl., Exh. "N"

24   [10/27/03 Letter from Gamard].

25        Finally, it is undisputed that Omega never notified Costco of the existence of

26   the Omega Globe, much less that the Globe was copyrighted or that Omega

27   contended that Costco did not have authority to distribute the Omega Globe.  Moss

28   Decl., Exh. "M" [YG Depo. 163:19-22].

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

### 3.     Non-Importing Retailers Are Not Liable Under Section 602(a).

Omega also fails to state a claim under section 602 because the statute proscribes only "importation" and Costco did not import.  The undisputed evidence demonstrates that Costco purchased watches with the Omega Globe from ENE in New York.  Moss Decl., Exh. "O" [EM Depo. 12:17-19].

In reversing this Court's decision regarding the first sale doctrine, the Ninth Circuit nevertheless expressed doubt that Omega could succeed in establishing its claim under section 602, relying on <u>Denbicare U.S.A. Inc. v. Toys "R" Us, Inc.</u>, 84 F.3d 1143, 1149 (9th Cir. 1996).  In <u>Denbicare</u>, the goods at issue were imported by the copyright owner, not the defendant.  The Omega court noted that:

> <u>Denbicare</u>'s rejection of a § 602(a) claim due to the defendant's lack of involvement in importation **suggests that Omega's claim under § 602(a) is similarly unmeritorious** because, like the defendant in <u>Denbicare</u>, Costco did not import the disputed copies.

<u>Omega S.A. v. Costco Wholesale Corp.</u>, 541 F.3d 982, 986 n.4 (9th Cir. 2008).

Despite the Ninth Circuit's statement in this case, Omega argues that the Court's earlier <u>Givenchy</u> opinion shows that Costco is liable under section 602.  But the issue presented by the defendant in <u>Givenchy</u> was different, i.e. whether the plaintiff had standing to sue for copyright infringement where it was not the copyright owner at the time the allegedly infringing goods were originally imported.  The issue of whether a non-importing infringer could be held liable under section 602(a) was not one of the grounds for defendant's appeal.  The Court rejected defendant's argument, because the plaintiff was the copyright owner when the defendant sold the goods.  <u>Parfums Givenchy v. Drug Emporium, Inc.</u>, 38 F.3d 477, 479-80 (9th Cir. 1994).

That the Ninth Circuit had not resolved the non-importer issue in <u>Givenchy</u> is demonstrated by its decision in <u>Disenos</u> two years later, in which the Court noted

that imposing liability on non-importers gave it "pause."  The Ninth Circuit recognized that if a non-importer could be liable, "every little gift shop in America would be subject to copyright penalties for genuine goods purchased in good faith from American distributors, where unbeknownst to the gift shop proprietor, the copyright owner had attempted to arrange some different means of distribution several transactions back."  97 F.3d at 380.  Ultimately, the Ninth Circuit had "no occasion to decide whether Costco as a non-importer can be liable for importation under section 602," deciding the case in favor of Costco on the alternative ground of implied authority.  97 F.3d at 380.  Had the Ninth Circuit resolved the issue of non-importer liability in <u>Givenchy</u>, as Omega now contends, there would have been no reason for the Court to have made this statement.

No Ninth Circuit case has subsequently decided the issue, but the <u>Omega</u> Court certainly signaled its belief that Omega's claim under section 602 was "unmeritorious."  <u>Omega S.A.</u>, 541 F.3d at 986 n.4.  On the other hand, the district court cases cited by Omega that have addressed liability ignore the plain language of the statute.  Indeed, in the case on which Omega focuses, <u>UMG Recordings, Inc. v. Disco Azteca Distribs.</u>, 446 F. Supp. 2d 1164, 1173 (E. D. Cal. 2006), the issue was not even briefed by the defendants.

The statutory language of section 602 is specific.  It deems only the act of "importation" to be an infringement.  17 U.S.C. § 602(a).  The plain meaning of the words is that only those who participate in the act of "importation" face infringement liability.  This plain language controls.  <u>United States. v. Derr</u>, 968 F.2d 943, 945 (9th Cir. 1992) ("Statutory construction always starts with the language of the statute itself.  This starting point is the ending point when the statute clearly and unambiguously expresses Congress' intent.").

Unlike the prior Ninth Circuit cases which did not resolve the issue, the Court did address and resolve the issue in <u>Enesco Corp. v. Jan Bell Mktg.</u>, holding that:

COSTCO'S OPPOSITION TO OMEGA'S MOTION FOR SUMMARY JUDGMENT

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1        Because neither the statute nor its legislative history

2        provides a definition, the court will give the term

3        "importation" its plain meaning.  See Smith v. United

4        States, 508 U.S. 223, 228 (1993) ("When a word is not

5        defined by statute, we normally construe it in accord with

6        its ordinary or natural meaning."); In re Merchants Grain,

7        Inc. By and Through Mahern, 93 F.3d 1347, 1353 (7th

8        Cir. 1996) (stating same rule). "Importation" is defined as

9        "the act of bringing goods and merchandise into a country

10       from a foreign country."  Black's Law Dictionary 755

11       (6th ed. 1990).  Because plaintiffs have offered no

12       evidence that defendant brought goods into the United

13       States from a foreign country, defendant cannot be held

14       liable for an act of "importation."

15 992 F. Supp. 1021, 1023 (N.D. Ill. 1998).

16       If section 602(a) were not clear enough, section 501(a) would be.  It deems

17 an infringer anyone "who imports copies or phonorecords into the United States in

18 violation of § 602."  17 U.S.C. § 501(a) (emphasis added).  This Court should

19 follow Enesco, the most thorough analysis of the issue and the one following the

20 statute's plain language, as well as the Ninth Circuit's suggestion in Disenos and

21 this case.  Costco was not someone who "imports"; thus, it is not an infringer under

22 section 602.

23       If Omega prevails, retailers will risk litigation whenever they deal in goods

24 they do not purchase directly from the copyright owner, chilling both commerce

25 and competition.[8]

26 ───────────────

[8] Omega argues that if every party in the "chain of distribution" were not held

27 liable, "a distributor could avoid liability simply by using a straw to import the
unauthorized copies." (Mem., 10:24-26).  However, in that instance the non-

28 importing defendant could face liability under theories such as contributory

1          **4.**    **Costco Did Not Acquire Watches Outside Of The United**

2          **States.**

3        Finally, "Section 602 bars unauthorized importation <u>only</u> of 'copies . . . that

4  have been acquired outside the United States." <u>Denbicare</u>, 84 F.3d at 1148-49

5  (emphasis in original).  Costco did not acquire watches containing the Omega

6  Globe Design "outside of the United States."  Costco purchased the Omega watches

7  at issue F.O.B. New York.  Because the watches were <u>already</u> in the United States

8  when Costco acquired them, Costco did not acquire them outside of the country,

9  and did not violate section 602.

10      **B.**    <u>**Omega Engaged In "Copyright Misuse" And Its Actions Violate**</u>

11          <u>**the Public Policy Underlying the Copyright Act.**</u>

12        The purpose of the U.S. Copyright Act is to grant authors of creative works a

13  limited monopoly in those works, not as an end in itself, but rather as a means of

14  achieving "public benefit" and to "reward creativity." <u>Twentieth Century Music</u>

15  <u>Corp. v. Aiken</u>, 422 U.S. 151, 156 (1975).

16        Omega's lawsuit is not designed to protect the Omega Globe or any artistic

17  elements which may be contained in the design.  Omega is attempting to use the

18  Omega Globe as a vehicle to control importation, and subsequent sales, of watches

19  that are not subject to copyright protection and that may otherwise be freely traded.

20        As shown above, Omega admits that the Omega Globe was designed for the

21  purpose of controlling U.S. importation of its watches.  Moss Decl., Exh. "M" [YG

22  Depo. 143:8-12].  In this manner, Omega has attempted to leverage the limited

23  monopoly granted under the Copyright Act contrary to public policies underlying

24  the Act, as well as policies regarding competition, the free flow in commerce of

25  genuine goods, and restraints on the alienation of property.  Competition is the

26  "fundamental principle governing commerce in this country." <u>Lafayette v.</u>

27  infringement for participating in the importation.  Here, Costco did not participate

28  in the importation in any way.

COSTCO'S OPPOSITION TO OMEGA'S MOTION FOR SUMMARY JUDGMENT

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1   <u>Louisiana Power & Light Co.</u>, 435 U.S. 389, 398 (1978).  In interpreting

2   intellectual property laws, courts have historically limited copyright claims when a

3   plaintiff attempts to use its limited monopoly to secure an exclusive right not

4   granted to it – especially when the effect is to restrict freedom of competition.  <u>See</u>,

5   <u>e.g.</u>, <u>Lasercomb Am. Inc. v. Reynolds</u>, 911 F.2d 970, 978 (4th Cir. 1990)

6   (competition invoked to limit rights of copyright owner to bring an infringement

7   action when "the copyright is being used in a manner violative of the public policy

8   embodied in the grant of copyright"); <u>United States v. Paramount Pictures, Inc.</u>, 334

9   U.S. 131, 158-59 (1948) (competition invoked to preclude copyright owner from

10   block-booking copyrighted works).

11        Courts have also rejected attempts by plaintiffs to use copyrights to protect or

12   control the market in an uncopyrighted work.  <u>See</u> <u>e.g.</u>, <u>Lexmark Int'l, Inc. v. Static</u>

13   <u>Control Components, Inc.</u>, 387 F.3d 522 (6th Cir. 2004); <u>Chamberlain Group, Inc.</u>

14   <u>v. Skylink Techs, Inc.</u>, 381 F.3d 1178 (Fed. Cir. 2004).

15        In <u>Lexmark</u>, the court rejected an attempt by a printer manufacturer to use

16   copyright law to prohibit a third party from selling a computer chip that permitted

17   the use of aftermarket toner cartridges in the printer.  <u>Lexmark</u>, 387 F.3d 522.  The

18   court noted that there is no copyright protection for a work when "granting

19   protection to the expressive component of the work necessarily would extend

20   protection to the work's uncopyrightable ideas."  <u>Id.</u> at 535.  This is especially true,

21   the Court held, when the quantum of originality in the plaintiff's copyrighted work

22   (there, a simple computer program) was so low.  <u>Id.</u> at 540-41.

23        Likewise, the quantum of originality present in the Omega Globe (a simple

24   arrangement of uncopyrightable symbols) is <u>de minimis</u>,[9] but Omega is attempting

25   to leverage that design to control distribution of the watches themselves, which are

26   not protected by copyright.  <u>See</u> <u>Quality King</u>, 523 U.S. at 150 ("we must

27   ───────────────────────
    [9] As shown in section C.1 below, the level of originality is not even sufficient to
28   justify copyright protection at all.

1  remember that its principal purpose was to promote the progress of the 'useful

2  Arts,' U.S. Const. Art. I, § 8, cl. 8, by rewarding creativity, and its principal

3  function is the protection of original works, rather than ordinary commercial

4  products that use copyrighted material as a marketing aid"). Unlike the plaintiff in

5  Quality King, Omega does not even attempt to use the Omega Globe as an aid to

6  market the useful articles to which it is affixed. Indeed, the Omega Globe was

7  placed on its watch specifically so that it would not be seen – i.e., small, on the

8  back, and without publicity.

9       In recent years, courts have referred to a particular species of public policy

10  violation as "copyright misuse" – the attempt to leverage the limited monopoly

11  conferred by the U.S. Copyright Act to control areas outside the monopoly. See,

12  e.g., Altera Corp. v. Clear Logic, Inc., 424 F.3d 1079, 1090 (9th Cir. 2005);

13  International Motor Contest Ass'n. v. Staley, 434 F. Supp. 2d 650, 664 (N.D. Iowa

14  2006). The Ninth Circuit recognizes copyright misuse as an affirmative defense to

15  copyright infringement claims. Practice Mgmt. Info. Corp. v. American Med.

16  Ass'n, 121 F.3d 516, 520 (9th Cir.), amended, 133 F. 3d 1140 (9th Cir. 1997); see

17  also Open Source Yoga Unity v. Choudhury, 74 U.S.P.Q.2d (BNA) 1434, 2005

18  U.S. Dist. LEXIS 10440, *24 (N.D. Cal. April 1, 2005) (doctrine of copyright

19  misuse permits a party accused of copyright infringement to challenge the

20  enforceability of the copyright based on the plaintiff's improper attempt to secure an

21  exclusive right not granted by the Copyright Office).

22       The Copyright Act was not designed to restrict the otherwise legal sale of

23  useful articles of commerce, and Omega's attempt to use the Act for that purpose

24  should be rejected. Under Omega's theory, tiny copyrighted designs could be

25  placed (indeed, hidden) on items such as electronics, furniture, or (for that matter)

26  bananas, to restrict the sale of those goods in the U.S., and notwithstanding that

27  authorized first sales of the goods have already been made abroad.

28       There is a triable issue of fact as to whether Omega violated public policy

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

COSTCO'S OPPOSITION TO OMEGA'S MOTION FOR SUMMARY JUDGMENT

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1    and misused its copyright in the Omega Globe.  At a minimum, a critical factual

2    question is Omega's intent in adopting the Globe and executing its distribution

3    strategy.  See, e.g., <u>Clicks Billiards, Inc. v. Sixshooters, Inc</u>., 251 F.3d 1252, 1266

4    (9th Cir. 2001) (issues of intent not susceptible to summary judgment).

5      **C.** **<u>Omega's Copyright Claims Fail Because the Omega Globe is a</u>**

6       **<u>Mere Compilation of Unprotectable Elements and a Useful Article</u>.**

7       **1.** **<u>Collection of Unprotectable Elements</u>**

8       Costco recognizes that Omega has obtained a copyright registration for the

9    Omega Globe.  However, the registration does not prove that Omega owns a valid

10   copyright; it merely constitutes prima facie evidence of validity, which is

11   rebuttable.  17 U.S.C § 410(c).   Here, Omega's simplistic arrangement of a few

12   common symbols (the Greek letter Omega, stars and a circle) falls far short of the

13   standard of originality imposed by the Copyright Act.  <u>Satava v. Lowry</u>, 323 F.3d

14   805, 810-11 (9th Cir. 2003) (finding no copyright protection for glass in glass

15   sculpture of a jellyfish because of an insufficient quantum of original ideas).

16      In denying copyright protection for the jellyfish sculptures, the <u>Satava</u> court

17   held:

18        Our case law suggests, and we hold today, that a

19       combination of unprotectable elements is eligible for

20       copyright protection only if those elements are numerous

21       enough and their selection and arrangement original

22       enough that their combination constitutes an original

23       work of authorship.

24        The combination of unprotectable elements in

25       Satava's sculpture falls short of this standard.  The

26       selection of the clear glass, oblong shroud, bright colors,

27       proportion, vertical orientation, and stereotyped jellyfish

28       form, considered together, lacks the quantum of

1    originality needed to merit copyright protection.

2    <u>Id</u>. at 811 (internal citations omitted).

3    Thus, in <u>Satava</u>, the Court decided that "the combination of six unprotectable

4    elements did not rise to the level of originality sufficient to merit copyright

5    protection." <u>Id</u>. Likewise, in <u>Lamps Plus, Inc. v. Seattle Lighting Fixture Co</u>, 345

6    F.3d 1140 (9th Cir. 2003), the Court found that a lamp consisting of a finial, a cap,

7    a glass light shade and a metal filigree, was not entitled to copyright protection.

8    The Omega Globe is even less entitled to protection.  It contains only *three*

9    elements – a circle, the Greek letter Omega and the stars – with no colors.  Each

10    element of the Globe is less novel and less creative than virtually every element of

11    the jellyfish or the lamp.  As noted above (n.7), the Court may grant summary

12    judgment in Costco's favor sua sponte where there is no triable issue of fact.  In any

13    event, whether the Omega Globe is protectable certainly cannot be resolved in

14    Omega's favor on summary judgment.

15       **2.**    <u>**Useful Article.**</u>

16    Omega is not entitled to copyright protection for the Omega Globe for a

17    second reason. Omega's copyright registration in the Omega Globe ostensibly

18    asserts protection in "two dimensional artwork."  Gulick Decl., Exh. C.  But Costco

19    did not sell two dimensional artwork, nor does Omega's lawsuit seek an injunction

20    and damages based on the importation of two dimensional artwork.  Rather, Omega

21    seeks to restrict Costco from selling a wristwatch.  The sole purpose of Omega's

22    barely-visible engraving is to obtain importation protection for the watch to which

23    it is affixed.  In other words, Omega is not seeking protection for artwork at all, but

24    rather for a "useful article" consisting solely of a combination of unprotectable

25    elements, not subject to copyright protection.

26    Section 101 of the Copyright Act defines a "useful article" as "an article

27    having an intrinsic utilitarian function that is not merely to portray the appearance

28    of the article or convey information."  The individual design elements of the Omega

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

COSTCO'S OPPOSITION TO OMEGA'S MOTION FOR SUMMARY JUDGMENT

1  Globe are only eligible for protection to the extent they are capable of existing

2  independently of the utilitarian aspects of the article.  17 U.S.C. § 101.  See Galiano

3  v. Harrah's Operating Co., 416 F.3d 411, 416 (5th Cir. 2005) (where a plaintiff

4  registered a copyright in two dimensional artwork, but used the design on clothing,

5  court held that plaintiff was seeking protection for a "useful article").

6       Summary judgment cannot be granted for Omega in light of this defense.  In

7  Poe v. Missing Persons, 745 F.2d 1238, 1242-43 (9th Cir. 1984), the Ninth Circuit

8  held that the resolution of the "critical factual question" of whether an item is

9  artwork or a useful article is for the trier of fact after a trial on the merits.  Poe holds

10  that the trier of fact may consider, among other things, evidence of the plaintiff's

11  intent in designing the article and whether the item is marketable to a significant

12  segment of the community as a work of art.

13       The Omega Globe is a simplistic collection of public domain symbols that

14  would not be marketable to a significant segment of the community separate and

15  apart from the watch on which it is placed.  See Poe, 745 F.2d at 1243.  Moreover,

16  because the purpose of the Omega Globe was to prevent unauthorized dealership

17  and control importation (Moss Decl., Exh. "M" [YG Depo. 174:23-175:2]), it is

18  functional.  A jury must be permitted to decide whether the Omega Globe is an

19  unprotected "useful article," and summary judgment is inappropriate.

20  **IV.  CONCLUSION**

21       For the foregoing reasons, Costco respectfully requests that Omega's motion

22  be denied, and that summary judgment be granted in Costco's favor.

23

24  DATED:  July 27, 2009          GREENBERG GLUSKER FIELDS
                                    CLAMAN & MACHTINGER LLP

25

26                                  By: _____
                                        AARON J. MOSS
27                                      Attorneys for Defendant
                                        Costco Wholesale Corporation

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590