1  NORMAN H. LEVINE (SBN 061884)
   NLevine@GreenbergGlusker.com
2  AARON J. MOSS (SBN 190625)
   AMoss@GreenbergGlusker.com
3  SEDINA L. BANKS (SBN 229193)
   SBanks@GreenbergGlusker.com
4  GREENBERG GLUSKER FIELDS CLAMAN &
   MACHTINGER LLP
5  1900 Avenue of the Stars, 21st Floor
   Los Angeles, California 90067-4590
6  Telephone: 310.553.3610
   Fax: 310.553.0687
7
8  Attorneys for Defendant
   Costco Wholesale Corporation

9

10             UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12

13  OMEGA S.A. and THE SWATCH          Case No.  CV 04-5443 TJH (RCx)
    GROUP (U.S.) INC.,
14                                     **DEFENDANT COSTCO
              Plaintiffs,              WHOLESALE CORPORATION'S
15                                     MEMORANDUM OF
    v.                                 CONTENTIONS OF FACT AND
16                                     LAW**
    COSTCO WHOLESALE
17  CORPORATION,                       [Central District Local Rule 16-4]

18            Defendant.

19                                     Final Pretrial Hearing: Sept. 29, 2009
                                       Trial Date: November 17, 2009
20                                     Action Filing Date: July 14, 2004

21

22         Defendant Costco Wholesale Corporation ("Costco"), hereby submits its

23  Memorandum of Contentions of Fact and Law, pursuant to Local Rule 16-4, in

24  connection with the Final Pretrial Conference in this case, currently scheduled for

25  September 29, 2009, at 10:00 a.m.

26

27

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

71825-00157/1699789.9

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND BACKGROUND FACTS .......................................1

    A.    Costco's Purchase and Sale of the Omega Watches Containing the Omega Globe...........................................................3

    B.    Costco's Lack of Knowledge of the Omega Globe ........................3

II.   OMEGA'S CLAIMS ...........................................................................4

    A.    Claims Omega Has Pleaded and Plans to Pursue ........................4

        1.    Claim 1: Copyright Infringement.............................................4

    B.    The Elements Required to Establish Omega's Claim.......................5

        1.    Claim 1: Elements to Establish Claim for Copyright Infringement:...................................................5

    C.    Brief Description of Key Evidence in Opposition to Omega's Claim:.........................................................5

        1.    Omega is Not the Owner of a Valid Copyright in the Omega Globe ...................................................5

        2.    Omega Implicitly Authorized Importation of Copies of the Omega Globe ...................................................7

        3.    Costco Did Not Import Copies of the Omega Globe.................8

        4.    Costco Did Not Acquire Copies of the Omega Globe Outside of the United States .......................................9

III.  COSTCO'S AFFIRMATIVE DEFENSES ...............................................10

    A.    Summary of Affirmative Defenses Costco Has Pleaded and Plans to Pursue .........................................................10

        1.    Tenth Affirmative Defense: Violation of Public Policy. .........10

        2.    Eleventh Affirmative Defense: Copyright Misuse. .................11

        3.    Twelfth Affirmative Defense: Innocent Infringement.............11

    B.    The Elements of and Evidence in Support of Costco's Affirmative Defenses.........................................................11

        1.    Violation of Public Policy ........................................................11

        2.    Copyright Misuse .....................................................................13

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

i

COSTCO'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

**TABLE OF CONTENTS**
**(continued)**

Page

3.      Innocent Infringement ................................................................ 14

IV.   EVEN IF COSTCO WERE HELD LIABLE, NO PERMANENT INJUNCTION SHOULD ISSUE ...................................................... 15

V.    THIRD PARTY CLAIMS ..................................................................... 17

VI.   ANTICIPATED EVIDENTIARY ISSUES ............................................. 17

VII.  BIFURCATION OF ISSUES ................................................................ 18

VIII. JURY TRIAL ....................................................................................... 18

IX.   ATTORNEY'S FEES ........................................................................... 18

X.    ABANDONMENT OF ISSUES ........................................................... 18

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

71825-00157/1699789.9

ii

COSTCO'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1

# TABLE OF AUTHORITIES

2

Page

3

<u>**FEDERAL CASES**</u>

4

<u>Altera Corp. v. Clear Logic, Inc.</u>,
424 F.3d 1079 (9th Cir. 2005) ................................................... 13

5

<u>Campbell v. Acuff-Rose Music, Inc.</u>,
510 U.S. 569 (1994) .................................................................. 16

6

7

<u>Chamberlain Group, Inc. v. Skylink Techs, Inc.</u>,
381 F.3d 1178 (Fed. Cir. 2004) ................................................. 12

8

<u>Columbia Pictures Television v. Krypton Broadcasting</u>,
106 F.3d 284 (9th Cir. 1997) ............................................... 15, 18

9

10

<u>Denbicare U.S.A. Inc. v. Toys "R" Us, Inc.</u>,
84 F.3d 1143 (9th Cir. 1996) ................................................. 5, 10

11

<u>Disenos Artisticos E Industriales, S.A. v. Costco Wholesale Corp.</u>,
97 F.3d 377 (9th Cir. 1996) ......................................................... 7

12

13

<u>eBay Inc. v. MercExchange, L.L.C.</u>,
547 U.S. 388 (2006) ........................................................... 15, 16

14

<u>Enesco Corp. v. Jan Bell Mktg.</u>,
992 F. Supp. 1021 (N.D. Ill. 1998) .............................................. 9

15

<u>Galiano v. Harrah's Operating Co.</u>,
416 F.3d 411 (5th Cir. 2005) ....................................................... 6

16

17

<u>In re Merchants Grain, Inc. By and Through Mahern</u>,
93 F.3d 1347 (7th Cir. 1996) ....................................................... 9

18

<u>International Motor Contest Ass'n. v. Staley</u>,
434 F. Supp. 2d 650 (N.D. Iowa 2006) ...................................... 14

19

20

<u>Lafayette v. Louisiana Power & Light Co.</u>,
435 U.S. 389 (1978) .................................................................. 12

21

<u>Lasercomb Am. Inc. v. Reynolds</u>,
911 F.2d 970 (4th Cir. 1990) ..................................................... 12

22

23

<u>Lexmark Int'l, Inc. v. Static Control Components, Inc.</u>,
387 F.3d 522 (6th Cir. 2004) ............................................... 12, 13

24

<u>MercExchange, L.L.C. v. eBay, Inc.</u>,
500 F. Supp. 2d 556 (E.D. Va. 2007) ........................................ 16

25

26

<u>MGM Studios, Inc. v. Grokster, Ltd.</u>,
518 F. Supp. 2d 1197 (C.D. Cal. 2007) ..................................... 16

27

28

71825-00157/1699789.9

iii

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1

2

**TABLE OF AUTHORITIES**
**(continued)**

Page

3   Naify v. McClatchy Newspapers,
4       599 F.2d 335 (9th Cir. 1979) ..................................................................... 7

5   Open Source Yoga Unity v. Choudhury,
        74 U.S.P.Q.2d (BNA) 1434, 2005 U.S. Dist. LEXIS 10440 (N.D. Cal.
6       April 1, 2005) ............................................................................................ 14

7   Parfums Givenchy, Inc. v. C & C Beauty Sales, Inc.,
        832 F. Supp. 1378, 1383 (C.D. Cal. 1993) ................................................. 5

8   Poe v. Missing Persons,
9       745 F.2d 1238 (9th Cir. 1984) ................................................................... 6

10  Practice Mgmt. Info. Corp. v. American Med. Ass'n,
        121 F.3d 516 (9th Cir.), amended, 133 F. 3d 1140 (9th Cir. 1997) ................. 14

11  Quality King Distributors, Inc. v. L'Anza Research International, Inc.,
12      523 U.S. 135 (1998) ........................................................................ 11, 13, 17

13  Satava v. Lowry,
        323 F.3d 805 (9th Cir. 2003) ..................................................................... 5

14  Sebastian Int'l v. Longs Drug Stores Corp.,
15      53 F.3d 1073 (9th Cir. 1995) ..................................................................... 11

16  Sebastian International, Inc. v. Consumer Contacts (PTY), Ltd.,
        847 F.2d 1093 (3d Cir. 1988) ................................................................... 11

17  Unidisco, Inc. v. Schattner,
18      824 F.2d 965 (Fed. Cir. 1987) ................................................................... 8

19  United States. v. Derr,
        968 F.2d 943 (9th Cir. 1992) ..................................................................... 9

20  United States v. Paramount Pictures, Inc.,
21      334 U.S. 131 (1948) ................................................................................ 12

22  Venegas-Hernandez v. Sonolux Records,
        370 F.3d 183 (1st Cir. 2004)..................................................................... 15

23

24  **STATE CASES**

25  Citizens of Humanity, LLC v. Costco Wholesale Corp.,
        171 Cal. App. 4th 1 (2009) ....................................................................... 11
26

27  John Paul Mitchell Sys. v. Randalls Food Mkts.,
        17 S.W.3d 721 (2000)............................................................................... 11

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

iv

COSTCO'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1

**TABLE OF AUTHORITIES**
**(continued)**

2

Page

3

**<u>STATUTES</u>**

4

17 U.S.C. § 101 ...................................................................................... 6

5

17 U.S.C. § 106 ...................................................................................... 8

6

17 U.S.C. § 502(a) ............................................................................... 15

7

17 U.S.C. § 504(c)(2) ..................................................................... 14, 15

8

17 U.S.C. § 505 .................................................................................... 18

9

17 U.S.C. § 602 .................................................................... 5, 7, 8, 9, 10

10

U.S. Const. Art. I, § 8, cl. 8 ................................................................. 13

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**GREENBERG GLUSKER FIELDS CLAMAN**
**& MACHTINGER LLP**
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

## I.    <u>INTRODUCTION AND BACKGROUND FACTS</u>

This action arises from plaintiff's attempt to block Costco's lawful sale of genuine Omega watches.  Costco sells brand name merchandise to its customers at lower prices than its competitors.  As an example, Omega's suggested retail price for the Omega "Seamaster" watch at issue in this lawsuit is $1,895.  Costco sold this watch for $1,299.

Plaintiff Omega S.A., Inc. ("Omega") brought this action alleging that Costco has violated the Copyright Act by selling certain Omega Seamaster watches containing the so-called "Omega Globe."  However, Omega's lawsuit has nothing to do with protecting creative works or serving any of the purposes that the Copyright Act was designed to encourage.



Omega Globe

The back of the Omega Seamaster Model 2531.80
(Exh. "16" to the deposition of Raynald Aeschlimann, compressed
to show approximate actual size of the Seamaster Watch.)

The Omega Globe, which is the basis for Plaintiffs' copyright claims:

- consists of an unoriginal compilation of unprotectable elements – three Greek "Omega" symbols and stars inside a circle;

- is barely noticeable, measuring less than a half centimeter in diameter;

- appears only on the <u>back</u> of the Seamaster Watch;

- was placed, at the time the lawsuit was filed, on only one of Omega's 400 wristwatch models;

- was concealed from Omega's customers, distributors and retailers; and

71825-00157/1699789.9

1

COSTCO'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

- had not appeared on any version of the Omega Seamaster for 55 years prior to 2003.

Costco sells several models of Omega watches as well as many other fine watch brands.  In or about April through August 2004, Costco purchased 117 Seamaster watches, Model No. 2531.80, from a single vendor.  Prior to 2004, Costco had purchased many of that model from its vendor and resold them through its warehouse stores.  Plaintiff did not object to these purchases.

The Seamaster watches purchased in mid-2004 were identical to those Costco purchased earlier, except that they contained the Omega Globe.  In July of 2004, Omega, without first sending a cease and desist letter or any other communication to Costco, brought this copyright action, and soon thereafter filed a motion for preliminary injunction.  Upon receiving notice of Omega's motion for preliminary injunction, Costco voluntarily stopped selling the Omega watches at issue, pulling all watches containing the Omega Globe from its warehouses, pending resolution of this case.  Costco did so in order to be able to litigate the matter on a complete record, and not because it believed Omega's claims were meritorious.

Omega does not allege that Costco copied the Omega Globe, or sold counterfeit watches in its warehouses.  It is conceded that all of the Omega watches that Costco purchased from its vendors were genuine.  Omega asserts that it previously sold these watches for full payment to its distributors in Egypt, Paraguay and other countries.  Omega contends that Costco violated Omega's copyright simply by re-selling these genuine Omega watches because the watches contain the tiny Omega Globe on the back.

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

A.   **Costco's Purchase and Sale of the Omega Watches Containing the Omega Globe**

Costco purchased 117 Omega watches containing the Omega Globe from a single vendor for $1,118.05 per watch between approximately April and August of 2004.  Before it pulled the watches from sale, Costco sold 43 of these watches to its members for $1,299.99 per watch.  The total difference between the price paid to the vendor and Costco's sales price for the Omega watches at issue, even without considering related costs, was thus $7,823.42.

Omega filed this lawsuit in July 2004, and shortly thereafter filed a motion for preliminary injunction.  After receiving Omega's notice of motion for preliminary injunction, Costco stopped selling the watches.  Although Costco argued that the motion was moot, the Court nevertheless entered a preliminary injunction.  Costco continues to sell many other models of Omega watches which do not contain the Omega Globe.

B.   **Costco's Lack of Knowledge of the Omega Globe**

Prior to Omega filing this action, Costco did not know of the existence of the Omega Globe and was unaware that any Omega watches contained the Omega Globe.  At no time prior to Omega's filing of this action did Omega inform Costco of the existence of the Omega Globe, that it was copyrighted, or that it appeared on the Omega Seamaster watch.  Indeed, Omega made no effort to inform anyone of the existence of the design.  Omega's Vice President of International Sales, Raynald Aeschlimann, testified during his deposition that Omega made a conscious decision not to publicize the Omega Globe, intending to keep the design confidential from all outside entities, including its own distributors and consumers at large.

Omega offers multiple and contradictory reasons for keeping the existence of the Omega Globe a secret.  Robert Emmons, General Manager of the Omega

division of Omega affiliate Swatch Group U.S., testified that the design was created for "prestige" and to control the importation of Omega watches into the United States.  Conversely, during his deposition, Mr. Aeschlimann testified that the design was created to prevent counterfeiting, a purpose that Mr. Emmons did not identify at all.  Mr. Emmons claimed that Omega told all of its U.S. customers about the Omega Globe, but there is no documentary or other evidence to support this claim.  Indeed, Mr. Aeschlimann testified that Omega made a conscious decision to keep the design confidential so that counterfeiters would be unaware of its presence.  Mr. Emmons testified that the design was highlighted in watch magazines and trade journals.  Mr. Aeschlimann testified to the contrary, indicating that the watch has not been publicized or mentioned in any watch magazines or trade journals.  When Costco requested that Omega produce all watch magazines and trade journals discussing the Omega Globe, Omega produced one article, but that article did not even mention the Omega Globe.

Omega's highest-ranking United States representative, Yann Gamard, who was Country Manager of Swatch Group (U.S.) from August 1998 through April 2005, testified that the Omega Globe was designed and used by Omega specifically to control the importation of Omega watches.  Mr. Gamard testified that it was the legal department that proposed obtaining a copyright to "enable [Omega] to protect the imports and have a better control on . . . distribution."

## II.  OMEGA'S CLAIMS

### A.  Claims Omega Has Pleaded and Plans to Pursue

#### 1.  Claim 1: Copyright Infringement

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

**B.**     **The Elements Required to Establish Omega's Claim**

    **1.**     **Claim 1: Elements to Establish Claim for Copyright Infringement:**

        a.     Omega is the owner of a valid, registered copyright in the Omega Globe;

        b.     Costco,

            i.     without Omega's authority:

            ii.     Imported copies of the Omega Globe into the United States;

        c.     Costco acquired these copies outside of the United States.

See 17 U.S.C. § 602; Parfums Givenchy, Inc. v. C & C Beauty Sales, Inc., 832 F. Supp. 1378, 1383 (C.D. Cal. 1993); Denbicare U.S.A. Inc. v. Toys "R" Us, Inc., 84 F.3d 1143, 1148-49 (9th Cir. 1996).

**C.**     **Brief Description of Key Evidence in Opposition to Omega's Claim:**

    **1.**     **Omega is Not the Owner of a Valid Copyright in the Omega Globe**

Omega does not own a valid copyright for two reasons.  First, the Omega Globe is an unoriginal compilation of unprotectable elements.  Second, it is an unprotectable "useful article."  For both reasons, it is not subject to copyright protection.

A combination of common elements that exhibits only "trivial creativity" does not rise to the level of originality sufficient to merit copyright protection. Satava v. Lowry, 323 F.3d 805, 810-11 (9th Cir. 2003) (finding no copyright protection for glass in glass sculpture of a jellyfish, and holding that "the combination of six unprotectable elements did not rise to the level of originality

COSTCO'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

sufficient to merit copyright protection"). Here, Omega's simplistic arrangement of a few common symbols (the Greek letter Omega, stars and a circle) falls far short of the standard of originality imposed by the Copyright Act.

The second reason Omega is not entitled to copyright protection for the Omega Globe is that, under the Copyright Act, objects, like watches, that have an intrinsic utilitarian function are not eligible for copyright protection. Omega's copyright registration in the Omega Globe ostensibly asserts protection in "two dimensional artwork." But Costco did not sell two dimensional artwork, nor does Omega's lawsuit seek an injunction and damages based on the importation of two dimensional artwork. Rather, Omega seeks to restrict Costco from selling a wristwatch. The sole purpose of Omega's barely-visible engraving is to obtain importation protection for the watch to which it is affixed. In other words, Omega is not seeking protection for artwork at all, but rather for a "useful article" consisting solely of a combination of unprotectable elements, not subject to copyright protection.

Section 101 of the Copyright Act defines a "useful article" as "an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or convey information." The individual design elements of the Omega Globe are only eligible for protection to the extent they are capable of existing independently of the utilitarian aspects of the article. 17 U.S.C. § 101. See Galiano v. Harrah's Operating Co., 416 F.3d 411, 416 (5th Cir. 2005) (where a plaintiff registered a copyright in two dimensional artwork, but used the design on clothing, court held that plaintiff was seeking protection for a "useful article").

In Poe v. Missing Persons, 745 F.2d 1238, 1242-43 (9th Cir. 1984), the Ninth Circuit held that in determining whether a work is a useful article not subject to copyright protection, the trier of fact may consider, among other things, evidence of the plaintiff's intent in designing the article and whether the item is marketable to a significant segment of the community as a work of art. Here, the evidence at trial

COSTCO'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1   will demonstrate that Omega's intent in designing the Omega Globe was to control

2   importation, not for any aesthetic reasons, and that Omega did nothing to market

3   the Globe as a work of art.

4

5           **2.     Omega Implicitly Authorized Importation of Copies of the**

6                    **Omega Globe**

7           At least implied authority existed for the importation of the Omega watches

8   at issue.  Omega placed these watches into the stream of international commerce,

9   selling them to Omega's authorized foreign distributors and retailers.  Omega has

10  no consistent policy or contracts which prevent international retailers from selling

11  Omega watches into the United States.

12          The Ninth Circuit has held that when a manufacturer permits sales without

13  restriction on export to the United States, <u>implied authority</u> exists to import the

14  goods into the United States.  <u>Disenos Artisticos E Industriales, S.A. v. Costco</u>

15  <u>Wholesale Corp.</u>, 97 F.3d 377, 382 (9th Cir. 1996).  The <u>Disenos</u> court stated that

16  "Authorization by a copyright owner to export goods to anywhere in the world

17  necessarily implies authority to import the goods into the United States.  <u>So do</u>

18  <u>sales without restriction on export into the United States</u>.  No written or express

19  authorization to import is required under 17 U.S.C. § 602(a)." <u>Id.</u> at 382 (emphasis

20  added).  <u>See</u> <u>also</u> <u>Naify v. McClatchy Newspapers</u>, 599 F.2d 335, 337 (9th Cir.

21  1979) (if copyright owner does not impose exportation restrictions on its

22  downstream sellers, they remain free to sell to anyone they choose).

23          Omega has written contracts with only three of its more than 250 distributors

24  and retailers.  Except for agreements with one distributor in each of Paraguay,

25  Turkey and Israel, there are <u>no</u> written distributorship agreements at all, let alone

26  the "detailed territorial restrictions" that Omega claims exist.  Omega's

27  Aeschlimann testified that there is <u>nothing</u> other than Omega's contracts with

28  distributors that would prevent the distributors from exporting watches to the

COSTCO'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1   United States.  The absence of such agreements demonstrates Omega's complete

2   lack of any consistent policy prohibiting exportation of watches.  In addition, the

3   evidence at trial will demonstrate that Omega took no adverse action against even

4   those distributors who purportedly sold watches that ended up at Costco.  Omega's

5   failure to enforce any restrictions it may have had is tantamount to having no

6   restrictions at all.

7        Perhaps recognizing that its distributors and retailers were implicitly

8   authorized to import Omega watches into the United States, Omega argues that it

9   explicitly notified Costco that it did not have Omega's authority to sell Omega

10  watches.  This is irrelevant to Omega's section 602 claim.

11       Section 602 requires a plaintiff to prove that <u>importation</u> was "without

12  authority."  It does not require that the expression of authority refer specifically to a

13  particular importer.  Instead, Costco is entitled to the benefit of the implied

14  authority that Omega has conferred on its foreign distributors and retailers.  Omega

15  sold watches to these distributors and retailers without imposing restrictions on the

16  purchasers to whom they could resell the watches.  By law, all subsequent bona fide

17  purchasers for value, such as Costco, acquire the same authority the upstream

18  licensees received in the goods they purchase.  <u>See</u> <u>Unidisco, Inc. v. Schattner</u>, 824

19  F.2d 965, 968 (Fed. Cir. 1987) (where a patent owner gives a licensee "authority to

20  sell the product," a subsequent purchaser from the licensee "had authority to resell

21  the product it purchased").  Because the implied authority given to an upstream

22  distributor extends to downstream sellers like Costco, Omega's claim for unlawful

23  distribution under section 106 of the Copyright Act is, like its section 602 claim,

24  also precluded.

25

26       **3.    Costco Did Not Import Copies of the Omega Globe**

27       The statutory language of section 602 is specific.  It deems only the act of

28  "importation" to be an infringement.  17 U.S.C. § 602(a).  The plain meaning of the

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

COSTCO'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1  words is that only those who participate in the act of "importation" face

2  infringement liability.  This plain language controls.  <u>United States. v. Derr</u>, 968

3  F.2d 943, 945 (9th Cir. 1992) ("Statutory construction always starts with the

4  language of the statute itself.  This starting point is the ending point when the

5  statute clearly and unambiguously expresses Congress' intent.").

6      Unlike Ninth Circuit cases, which have not resolved this issue, the Court did

7  address and resolve the issue in <u>Enesco Corp. v. Jan Bell Mktg.</u>, holding that:

8          Because neither the statute nor its legislative history

9          provides a definition, the court will give the term

10         "importation" its plain meaning.  <u>See</u> <u>Smith v. United</u>

11         <u>States</u>, 508 U.S. 223, 228 (1993) ("When a word is not

12         defined by statute, we normally construe it in accord with

13         its ordinary or natural meaning."); <u>In re Merchants Grain,</u>

14         <u>Inc. By and Through Mahern</u>, 93 F.3d 1347, 1353 (7th

15         Cir. 1996) (stating same rule). "Importation" is defined as

16         "the act of bringing goods and merchandise into a country

17         from a foreign country."  Black's Law Dictionary 755

18         (6th ed. 1990).  Because plaintiffs have offered no

19         evidence that defendant brought goods into the United

20         States from a foreign country, defendant cannot be held

21         liable for an act of "importation."

22  992 F. Supp. 1021, 1023 (N.D. Ill. 1998).

23

24      **4.    Costco Did Not Acquire Copies of the Omega Globe Outside**

25          **of the United States**

26      Costco did not acquire watches containing the Omega Globe "outside of the

27  United States."  The Ninth Circuit has confirmed that "Section 602 bars

28  unauthorized importation <u>only</u> of 'copies . . . that have been acquired outside the

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

United States." <u>Denbicare U.S.A. Inc. v. Toys "R" Us, Inc.</u>, 84 F.3d 1143, 1148-49 (9th Cir. 1996) (emphasis in original).  Costco purchased the Omega watches at issue in this lawsuit from a supplier located in New York, F.O.B. New York. Because the watches that Costco acquired were <u>already</u> in the United States at the time they were purchased by Costco, Costco did not acquire them outside of the country, and did not commit copyright infringement under section 602 of the Act.

## III.   COSTCO'S AFFIRMATIVE DEFENSES

### A.   Summary of Affirmative Defenses Costco Has Pleaded and Plans to Pursue[1]

1.   **Tenth Affirmative Defense: Violation of Public Policy.**   The action and/or any recovery of damages is barred as being contrary to public policy, including without limitation public policies regarding competition, the free flow of commerce of genuine goods, and restraints on the alienation of property. Omega purposely hid the Omega Globe from consumers and retailers and, through this lawsuit, have attempted to use their copyright for the purpose of limiting competition in the sale of useful articles which are not subject to copyright protection. Omega's anti-competitive conduct is antithetical to the public policy embodied in the grant of a copyright – to promote the progress of the arts for the general public good.

---

[1] Costco will not pursue its second and fourth affirmative defenses (relating to the Copyright Act's "first sale doctrine") unless and until the Supreme Court grants Costco's pending petition for writ of certiorari.  Costco will not pursue its first affirmative defense (implied authority), third affirmative defense (no non-importer liability) and fifth affirmative defense (good faith purchaser for value), based on an agreement that Costco reached with Omega.  The parties agreed that these defenses need not be asserted affirmatively, as they are all encompassed within the elements of Omega's claim.  By not asserting these defenses affirmatively, Costco in no way intends to excuse Omega from its burden of establishing each element of its claim.

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

2.     **Eleventh Affirmative Defense: Copyright Misuse.**  Omega has misused its alleged copyright in the Omega Globe by attempting to expand the limited scope of the monopoly conferred by the U.S. Copyright Act.  Specifically, without limitation, Omega has attempted to use the Omega Globe as a vehicle to control the importation, and subsequent sales, of the watches to which the design is affixed.

3.     **Twelfth Affirmative Defense: Innocent Infringement.**
Should Costco be found liable of copyright infringement, which Costco denies, Costco was not aware and had no reason to believe that its acts constituted an infringement of copyright.

**B.     The Elements of and Evidence in Support of Costco's Affirmative Defenses**

**1.     Violation of Public Policy**

Even if Omega could otherwise establish each of the elements of a copyright infringement claim, this claim would be barred as violating the public policy underlying the Copyright Act.

Costco is under no contractual or other restrictions which would prevent it from selling Omega watches, nor does Omega contend it is.  Courts have repeatedly rejected efforts by manufacturers to restrict distribution or prevent "diversion" of their products.  See e.g., Quality King Distributors, Inc. v. L'Anza Research International, Inc., 523 U.S. 135 (1998); Sebastian Int'l v. Longs Drug Stores Corp., 53 F.3d 1073 (9th Cir. 1995); John Paul Mitchell Sys. v. Randalls Food Mkts., 17 S.W.3d 721 (2000); Sebastian International, Inc. v. Consumer Contacts (PTY), Ltd., 847 F.2d 1093, 1099 (3d Cir. 1988); Citizens of Humanity, LLC v. Costco Wholesale Corp., 171 Cal. App. 4th 1 (2009).

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

The U.S. Copyright Act grants authors of creative works a limited monopoly in those works, not as an end in itself, but rather as a means of achieving public benefit.  Omega's copyright in the Omega Globe has not been used for the purpose of protecting whatever artistic creation may have been contained in the design.  Rather, Omega admitted that its Omega Globe was used for the purpose of controlling United States importation of the products to which it was affixed.

In this manner, Omega has attempted to leverage the limited monopoly granted under the Copyright Act contrary to public policies underlying the Act, as well as policies regarding competition, the free flow in commerce of genuine goods, and restraints on the alienation of property.  Competition is the "fundamental principle governing commerce in this country."  Lafayette v. Louisiana Power & Light Co., 435 U.S. 389, 398 (1978).  In interpreting intellectual property laws, courts have limited copyright claims when a plaintiff attempts to use its limited monopoly to secure an exclusive right not granted to it – especially when the effect is to restrict freedom of competition.  Lasercomb Am. Inc. v. Reynolds, 911 F.2d 970, 978 (4th Cir. 1990) (competition invoked to limit rights of copyright owner to bring an infringement action when "the copyright is being used in a manner violative of the public policy embodied in the grant of copyright"); United States v. Paramount Pictures, Inc., 334 U.S. 131, 158-59 (1948) (competition invoked to preclude copyright owner from block-booking copyrighted works).

Courts have also rejected attempts by plaintiffs to use copyrights to protect or control the market in an uncopyrighted work.  See e.g., Lexmark Int'l, Inc. v. Static Control Components, Inc., 387 F.3d 522 (6th Cir. 2004); Chamberlain Group, Inc. v. Skylink Techs, Inc., 381 F.3d 1178 (Fed. Cir. 2004).

In Lexmark, the court rejected an attempt by a printer manufacturer to use copyright law to prohibit a third party from selling a computer chip that permitted the use of aftermarket toner cartridges in the printer.  Lexmark, 387 F.3d 522.  The

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

COSTCO'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1  court noted that there is no copyright protection for a work when "granting

2  protection to the expressive component of the work necessarily would extend

3  protection to the work's uncopyrightable ideas." Id. at 535.  This is especially true,

4  the Court held, when the quantum of originality in the plaintiff's copyrighted work

5  (there, a simple computer program) was so low.  Id. at 540-41.

6       Likewise, the quantum of originality present in the Omega Globe (a simple

7  arrangement of uncopyrightable symbols) is de minimis,[2] but Omega is attempting

8  to leverage that design to control distribution of the watches themselves, which are

9  not protected by copyright.  See Quality King, 523 U.S. at 150 ("we must

10  remember that its principal purpose was to promote the progress of the 'useful

11  Arts,' U.S. Const. Art. I, § 8, cl. 8, by rewarding creativity, and its principal

12  function is the protection of original works, rather than ordinary commercial

13  products that use copyrighted material as a marketing aid").  Unlike the plaintiff in

14  Quality King, Omega does not even attempt to use the Omega Globe as an aid to

15  market the useful articles to which it is affixed.  Indeed, the Omega Globe was

16  placed on its watch specifically so that it would not be seen – i.e., small, on the

17  back, and without publicity.  It is a violation of public policy for a copyright owner

18  to use its copyright to protect or control the market in an uncopyrighted work.  If

19  the jury finds that Omega violated the public policy of the copyright law, it should

20  find for Costco.

22       **2.**    **Copyright Misuse**

23       In recent years, courts have referred to a particular species of public policy

24  violation as "copyright misuse" – the attempt to leverage the limited monopoly

25  conferred by the U.S. Copyright Act to control areas outside the monopoly.  See,

26  e.g., Altera Corp. v. Clear Logic, Inc.,  424 F.3d 1079, 1090 (9th Cir. 2005);

27  _____

[2] As discussed above, the level of originality is not even sufficient to justify copyright protection at all.

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

International Motor Contest Ass'n. v. Staley, 434 F. Supp. 2d 650, 664 (N.D. Iowa 2006). The Ninth Circuit recognizes copyright misuse as an affirmative defense to copyright infringement claims. Practice Mgmt. Info. Corp. v. American Med. Ass'n, 121 F.3d 516, 520 (9th Cir.), amended, 133 F. 3d 1140 (9th Cir. 1997); see also Open Source Yoga Unity v. Choudhury, 74 U.S.P.Q.2d (BNA) 1434, 2005 U.S. Dist. LEXIS 10440, *24 (N.D. Cal. April 1, 2005) (doctrine of copyright misuse permits a party accused of copyright infringement to challenge the enforceability of the copyright based on the plaintiff's improper attempt to secure an exclusive right not granted by the Copyright Office).

The Copyright Act was not designed to restrict the otherwise legal sale of useful articles of commerce, and Omega's attempt to use the Act for that purpose should be rejected. Under Omega's theory, tiny copyrighted designs could be placed (indeed, hidden) on items such as electronics, furniture, or (for that matter) bananas, to restrict the sale of those goods in the U.S., and notwithstanding that authorized first sales of the goods have already been made abroad.

### 3. Innocent Infringement

Costco contends that if it did infringe Omega's copyright, it did so innocently. If Costco proves this by a preponderance of the evidence, the trier of fact may reduce statutory damages for infringement of the copyrighted work to a sum as low as $200.

An infringement is considered innocent when:

(1) the defendant was not aware that the defendant's acts constituted infringement of the copyright; and

(2) the defendant had no reason to believe that the defendant's acts constituted an infringement of the copyright.

See 17 U.S.C. § 504(c)(2); Ninth Circuit Manual of Model Jury Instructions (Civil), Instruction 20.25.

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1   As discussed above, when Costco sold the Omega watches containing the

2   Omega Globe, Costco was unaware of the existence of the Omega Globe, let alone

3   Omega's placement of the design on its watches.  Costco has sold Omega watches

4   for years without objection.  Omega made no effort to inform Costco (or anyone) of

5   the existence of the Omega Globe, despite Costco's previous sales of Omega

6   watches in its warehouses.

7   These facts demonstrate that any purported infringement by Costco was done

8   "innocently," thus reducing Omega's potential statutory damages to a total of $200.

9   17 U.S.C. § 504(c)(2).  Under the U.S. Copyright Act, a party may only recover

10   statutory damages for each <u>work</u> infringed and not for each infringing act.  <u>See</u>

11   <u>Columbia II</u>, 259 F.3d 1186; <u>Columbia Pictures Television v. Krypton</u>

12   <u>Broadcasting</u>, 106 F.3d 284, 294 (9th Cir. 1997)("<u>Columbia I</u>"), <u>rev'd on other</u>

13   <u>grounds</u>, <u>Feltner v. Columbia Pictures Television, Inc.</u>, 523 U.S. 340, 355 (1998);

14   <u>Venegas-Hernandez v. Sonolux Records</u>, 370 F.3d 183 (1st Cir. 2004).  Here,

15   Omega alleges that Costco infringed its copyright in <u>one</u> work – the Seamaster

16   watch model no. 2531.80 containing the Omega Globe.  Accordingly, even if it

17   were to prevail on its copyright infringement claim, Omega would only be entitled

18   to receive one award of statutory damages, regardless of how many such watches

19   Costco sold containing the Omega Globe.  <u>See</u> <u>Columbia II</u>, 259 F.3d at 1193.

20

21   **IV.   <u>EVEN IF COSTCO WERE HELD LIABLE, NO PERMANENT</u>**

22   **<u>INJUNCTION SHOULD ISSUE</u>**

23   The Copyright Act provides that courts "may" grant injunctive relief "on

24   such terms as it may deem reasonable to prevent or restrain infringement of a

25   copyright." 17 U.S.C. § 502(a).  The United States Supreme Court recently held

26   that the grant of a permanent injunction is not mandatory or automatic in cases

27   involving the infringement of intellectual property.  <u>eBay Inc. v. MercExchange,</u>

28   <u>L.L.C.</u>, 547 U.S. 388, 391 (2006).

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1   The Supreme Court has "consistently rejected invitations to replace

2   traditional equitable considerations with a rule that an injunction automatically

3   follows a determination that a copyright has been infringed." eBay, 547 U.S. at

4   392, citing New York Times Co. v. Tasini, 533 U.S. 483, 505 (2001), Campbell v.

5   Acuff-Rose Music, Inc., 510 U.S. 569, 578, n. 10, (1994)) (goals of copyright law

6   are "not always best served by automatically granting injunctive relief").

7   Instead, courts must look to the "well-established principles of equity" in

8   determining whether to issue a permanent injunction. Id.  To warrant the issuance

9   of a permanent injunction, the plaintiff must satisfy the following four-part test:

10   (1) that it has suffered an irreparable injury;

11   (2) that remedies available at law, such as monetary damages, are inadequate

12   to compensate for that injury;

13   (3) that, considering the balance of hardships between the plaintiff and

14   defendant, a remedy in equity is warranted; and

15   (4) that the public interest would not be disserved by a permanent injunction.

16   Id.

17   After eBay, irreparable harm is no longer presumed even where liability has

18   been established.  MGM Studios, Inc. v. Grokster, Ltd., 518 F. Supp. 2d 1197, 1211

19   (C.D. Cal. 2007); MercExchange, L.L.C. v. eBay, Inc., 500 F. Supp. 2d 556, 568

20   (E.D. Va. 2007).  Here, Omega has not suffered any injury, let alone "irreparable

21   injury."  Omega has already been fully compensated for the watches at issue.  To

22   the extent Omega truly complains about injury based upon the infringement of "two

23   dimensional artwork" (as opposed to the uncopyrightable watches to which it is

24   affixed), such claims are fully compensable in damages, especially given the non-

25   existent role of the Omega Globe in Omega's marketing campaigns.

26   Costco has only sold Omega Globe watches on two occasions: first, prior to

27   the preliminary injunction being entered, when it did not know that the Globe

28   existed, much less that it was copyrighted, and thus in good faith believed it had the

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1  right to sell the watches; and second, after this Court granted summary judgment in

2  its favor, which constituted an explicit finding that Costco's actions in selling the

3  watches was permissible.  There is no evidence that Costco has sold Omega Globe

4  watches since the Ninth Circuit issued its opinion reversing summary judgment, or

5  that there is any threat of continuing infringement.

6      Moreover, it would be difficult at best to frame an injunction of a proper

7  scope.  Even under Omega's theory, Costco is entitled to sell Omega watches even

8  with the Globe if Omega authorizes the importation of the watch in question.  Since

9  at most Costco can be enjoined only from selling watches imported through an

10  Omega dealer that has a contract with Omega that forbids export to the United

11  States, individual inquiry will be necessary with respect to each watch sold.

12      Finally, we reiterate that the works at issue in this case are not the

13  quintessential copyrighted works, such as books, motion pictures, records.  They

14  are watches, to which Omega secretly affixed a tiny emblem specifically designed

15  to restrict importation.  As the Supreme Court has aptly noted, the Copyright Act's

16  "principal function is the protection of original works, rather than ordinary

17  commercial products that use copyrighted material as a marketing aid."  Quality

18  King, 523 U.S. at 150.

19      No permanent injunction is necessary or appropriate in this case and, should

20  liability be established, the Court should exercise its discretion to deny such an

21  injunction.

22

23  **V.     THIRD PARTY CLAIMS**

24      This case does not involve claims by or against third parties.

25

26  **VI.    ANTICIPATED EVIDENTIARY ISSUES**

27      Costco is renewing its previous motions in limine (which the Court did not

28  need to rule upon after previously granting summary judgment in Costco's favor),

1  seeking to exclude evidence and argument of (1) other copyright actions against

2  Costco; and (2) Costco's receipt of Omega watches that are not at issue in this

3  lawsuit.

4

5  **VII.  <u>BIFURCATION OF ISSUES</u>**

6    Costco does not believe that any issues need to be bifurcated.

7

8  **VIII.  <u>JURY TRIAL</u>**

9    Omega has requested that this case be tried to a jury.  The United States

10  Supreme Court has ruled that there is a constitutional right to a jury trial on the

11  question of statutory damages and all issues pertinent thereto.  <u>Feltner v. Columbia</u>

12  <u>Pictures Television, Inc.</u>, 523 U.S. 340, 355 (1998).

13

14  **IX.  <u>ATTORNEY'S FEES</u>**

15    The Copyright Act, 17 U.S.C. § 505, provides that the court may award

16  reasonable attorney's fees to the prevailing party as part of its costs.   An attorney's

17  fee award exists, in part, as an economic deterrent to bringing unwarranted actions

18  for copyright infringement.  As discussed above, Costco should not be held liable

19  for copyright infringement.  Moreover, the infringement action brought by

20  Plaintiffs is completely antithetical to the purposes of the Copyright Act.  Thus, the

21  Court should award Costco all of its attorney's fees at the conclusion of this action.

22

23

24

25

26

27

28

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

**X.   ABANDONMENT OF ISSUES**

Costco has abandoned its affirmative defenses of waiver and estoppel.

DATED:  September 8, 2009

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP

By _____
AARON J. MOSS
Attorneys for Defendant
Costco Wholesale Corporation

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

COSTCO'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW